Leslie A. Blozan, Esq. – SBN: 81481
**BASICH LAW GROUP**
1955 W. Glenoaks Blvd.
Glendale, California 91201
Email: LBlozan@gmail.com
Telephone:  (818) 558-6885
Facsimile: (818) 558-6756

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ABIGAIL AGUILERA-CUBITT, as Successor-In-Interest on behalf of  Reyes Aguilera, deceased, and ABIGAIL AGUILERA-CUBITT, an individual, | Case No.:  8:22-cv-00249-JVS-JDE |
|  | Assigned to the Hon. James V. Serna [Courtroom 10C] |
|          Plaintiff, | |
| vs. | **REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY WITH AND IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND** |
| AG SEAL BEACH, LLC dba Seal Beach Health and Rehabilitation, a limited liability corporation; and DOES 1- 20, | |
|          Defendants. | Hearing Date:  April 11, 2022 Time: 1:30 p.m. Courtroom:  10C |

        TO THE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

        PLEASE TAKE NOTICE that pursuant to Federal Rule of Evidence 201, Plaintiff, ABIGAIL AGUILERA-CUBITT, requests  that the  Court  take  judicial

notice of the following documents, attached as Exhibits 1 through 2, in support of Plaintiff's Motion to Remand:

**Exhibit "1"** – District Court opinion issued on October 14, 2020 in *Saldana v. Glenhaven Healthcare LLC* (C.D.Cal. Oct. 14, 2020, No. CV 20-5631 FMO (MAAx)) 2020 U.S.Dist.LEXIS 216490) and affirmed on February 22, 2022 in (*Saldana v. Glenhaven Healthcare, LLC* (9th Cir. Feb. 22, 2022, No. 20-56194) 2022 U.S. App. LEXIS 4631).   A true and correct copy of these opinions are attached hereto as Exhibit "1."

**Exhibit "2"** – District Court opinion issued on June 25, 2021, in *Reed v. Sunbridge Hallmark Health Servs., LLC* (C.D.Cal. June 25, 2021, No. CV 21-3702-JFW(AGRx)) 2021 U.S.Dist.LEXIS 119092.).   A true and correct copy of this opinion is attached hereto as Exhibit "2.".

**Exhibit "3"** – Appellate Court order issued on November 19, 2021, in *(Reed v. Sunbridge Hallmark Health Servs., LLC* (9th Cir. Nov. 19, 2021, No. 21-55808) 2021 U.S. App. LEXIS 34533.).  A true and correct copy of this opinion is attached hereto as Exhibit "3.".

DATED:  March 15, 2022                BASICH LAW GROUP


By: *Leslie A. Blozan*
    Leslie A. Blozan
    Attorneys for Plaintiff

Exhibit 1

# *Saldana v. Glenhaven Healthcare LLC*

United States District Court for the Central District of California

October 14, 2020, Decided; October 14, 2020, Filed

CV 20-5631 FMO (MAAx)

**Reporter**

2020 U.S. Dist. LEXIS 216490 *; 2020 WL 6713995

Jackie Saldana, et al. v. Glenhaven Healthcare LLC, et al.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Affirmed by *Saldana v. Glenhaven Healthcare LLC, 2022 U.S. App. LEXIS 4631 (9th Cir., Feb. 22, 2022)*

**Counsel:** [*1] For Benjamin Karp, an individual, Caravan Operations Corp., a California corporation, Glenhaven Healthcare LLC, a California corporation, Matthew Karp, an individual, Defendants: Kathleen Marie Walker, LEAD ATTORNEY, Lynnette Avaness Christopoulos, Lewis Brisbois Bisgaard and Smith LLP, Los Angeles, CA.

For Celia Saldana, as individuals and as successors and heirs to Ricardo Saldana deceased, Jackie Saldana, as individuals and as successors and heirs to Ricardo Saldana deceased, Maria Saldana, as individuals and as successors and heirs to Ricardo Saldana deceased, Ricardo Saldana Jr., as individuals and as successors and heirs to Ricardo Saldana deceased, Plaintiffs: Ari Jacob Dybnis, Scott Charles Glovsky, LEAD ATTORNEYS, Law Office of Scott Glovsky APC, Claremont, CA.

For Does, 1 through 100 inclusive, Defendant: Lynnette Avaness Christopoulos, Lewis Brisbois Bisgaard and Smith LLP, Los Angeles, CA.

**Judges:** Fernando M. Olguin, United States District Judge.

**Opinion by:** Fernando M. Olguin

# Opinion

CIVIL MINUTES - GENERAL

**Proceedings: (In Chambers) Order Re: Motion to Remand**

Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion to Remand (Dkt. 11, "Motion"), the court concludes that oral [*2] argument is not necessary to resolve the Motion, see *Fed. R. Civ. P. 78(b)*; Local Rule 7-15; *Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001)*, and orders as follows.

## BACKGROUND

On June 10, 2020, plaintiffs Jackie Saldana, Celia Saldana, Ricardo Saldana, Jr., and Maria Saldana, individually and as successors and heirs of Ricardo Saldana ("Saldana"), deceased ("plaintiffs") filed a First Amended Complaint ("FAC") in the Los Angeles County Superior Court ("state court") against defendants Glenhaven Healthcare LLC ("Glenhaven"), Caravan Operations Corp., Matthew Karp, and Benjamin Karp

(collectively, "defendants"). (See Dkt. 3, Notice of Removal ("NOR") at ¶ 1); (Dkt. 3-7, FAC). Plaintiffs allege that defendants improperly and inadequately protected Saldana from the COVID-19 virus during the coronavirus pandemic. (See Dkt. 3-7, FAC at ¶¶ 20-35). Saldana was an elderly resident of Glenhaven's nursing home in Glendale, California. (See id. at ¶ 20). Plaintiffs allege that although California and Los Angeles declared a state of emergency in early March 2020, Glenhaven not only failed to implement appropriate safety measures, but "stopp[ed] its staff from protecting themselves and the residents" from the coronavirus. (Id. at ¶ 25). For instance, supervisors at Glenhaven told [*3] staff that they could not wear their own masks, even when employees indicated that they had been sick. (See id. at ¶ 26). And when the local fire department provided boxes of masks to the facility, a Glenhaven supervisor locked them away rather than distributing them to employees. (See id. at ¶ 27). Glenhaven supervisors also did not disclose that one of its nurses had previously worked at a facility that was shut down because of uncontrolled COVID-19 infections and that the nurse had been exposed to the virus. (See id. at ¶ 28). Instead, supervisors downplayed the virus and "compared [it] to the flu." (Id. at ¶ 29). Finally, in late March 2020, Glenhaven placed a resident who had shared a room with a COVID-19 positive resident in Saldana's room. (See id. at ¶ 34). Saldana subsequently began to develop a fever and other symptoms of the virus, and ultimately died on April 13, 2020, from the coronavirus. (See id. at ¶ 35). Plaintiffs' FAC asserts four state law claims: (1) elder abuse; (2) willful misconduct; (3) custodial negligence; and (4) wrongful death. (See id. at ¶¶ 36-61).

On June 24, 2020, defendants removed the action on the basis of federal question jurisdiction pursuant to [*4] *28 U.S.C. § 1331* and the federal officer removal statute, *28 U.S.C. § 1442(a)(1)*. (See Dkt. 3, NOR at ¶

6). Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion (Dkt. 11), the court concludes that this action must be remanded to the state court for lack of subject matter jurisdiction. See *28 U.S.C. § 1447(c)*.

## LEGAL STANDARD

Removal of a civil action from the state court where it was filed is proper if the action might have originally been brought in federal court. See *28 U.S.C. § 1441(a)* ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "The burden of establishing federal jurisdiction is upon the party seeking removal[.]" *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)*; see *Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 684 (9th Cir. 2006)* (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). As such, any doubts are resolved in favor of remand. See *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)* ("We strictly construe the removal statute against removal jurisdiction."). Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." [*5] *28 U.S.C. § 1447(c)*. In general, under the "well-pleaded complaint" rule, courts look to the complaint to determine whether an action falls within the bounds of federal question jurisdiction. See *Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944 (9th Cir. 2009)*.

## DISCUSSION

I. SUBJECT MATTER JURISDICTION.

Defendants contend that federal question jurisdiction exists in this action because plaintiffs' claims arise under a federal statute, namely The *Public Readiness and Emergency Preparedness Act, ("PREP Act"), 42 U.S.C. §§ 247d-6d*, *247d-6e*. (See Dkt. 3, NOR at ¶¶ 6, 9-11). Defendants argue that the PREP Act completely preempts plaintiffs' state-law claims, and even if it did not, federal question jurisdiction exists because the claims raise a federal issue.[1] (*Id.* at ¶ 18). With respect to complete preemption, the PREP Act is "not one of the three statutes that the Supreme Court has determined has extraordinary preemptive force." See *City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020); *Martin v. Serrano Post Acute LLC, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, *1-2 (C.D. Cal. 2020)* (finding that PREP Act did not preempt plaintiffs' state law claims relating to defendants' alleged "fail[ure] to take proper precautions to prevent the spread of COVID-19 in the [nursing] facility, and fail[ure] to react properly to the infections that became present in the facility[,]" which led to decedent's death from COVID-19). Moreover, defendants "make a lengthy [*6] argument in favor of their immunity under the PREP Act, but mere immunity against state law or preemption of state law is not the equivalent of complete preemption and does nor provide removal jurisdiction."[2] *Martin,*

*2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, at *2*, see also *Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L. Ed. 2d 318 (1987)* ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint[.]") (emphasis in original). Accordingly, the court finds that the PREP Act does not confer federal question jurisdiction.[3]

Defendants also contend that removal is warranted under the federal officer removal statute, *28 U.S.C. § 1442(a)(1)*.[4] (See Dkt. 3, NOR at ¶¶ 20-43); (Dkt. 18, Opp. at 16-23). Although the federal officer removal

---

the appropriate response is to file a demurrer in state court. If the state court dismisses the state law claims, Plaintiffs could then decide if they wish to file claims under the PREP Act in the District of the District of Columbia, the court with exclusive jurisdiction over such claims." *Martin, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, at *2* (citing *42 U.S.C. § 247d-6d(e)(1)*).

[3] Nor does federal question jurisdiction exist based on defendants' contention that plaintiffs' state-law claims present a substantial, embedded question of federal law. (See Dkt. 18, Defendants['] Opposition to Motion to Remand ("Opp.") at 4-9; Dkt. 3, NOR at ¶¶ 18-19); see *Martin, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, at *3* ("Defendants [ ] make no attempt to show that this particular case raises substantial questions important to the federal system as a whole, and it is clear that it does not.") (internal quotation marks omitted).

[4] Under the federal officer removal statute, a case may be removed by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." *28 U.S.C. § 1442(a)(1)*.

---

[1] The court notes that the allegations in the FAC do not support a claim that Saldana's death resulted from defendants' administration to or use by Saldana of a covered countermeasure. (See, generally, Dkt. 3-7, FAC); (see also Dkt. 20, Plaintiffs' Reply to Defendants' Opposition to Motion to Remand at 5).

[2] As the court in *Martin* succinctly put it: "It is largely irrelevant that federal courts have exclusive jurisdiction under the PREP Act because none of the claims in the complaint, on its face, are brought under that Act. If Defendants believe that some or all of Plaintiffs' state law claims are barred by the PREP Act,

statute must be "liberally construed[,]" *Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 147, 127 S.Ct. 2301, 2305, 168 L. Ed. 2d 42 (2007)* (internal quotation marks omitted), the court finds that it does not confer jurisdiction in this instance. Defendants argue that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19." (Dkt. 18, Opp. at 17). However, "[t]he directions [*7] Defendants point to are general regulations and public directives regarding the provision of medical services[,]" which are insufficient. *Martin, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, at *1*; see *Watson, 551 U.S. at 153, 147 U.S. at 2308* ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.").

II. FEES AND COSTS.

Plaintiffs seek attorney's fees and costs for defendants' "frivolous" removal. (See Dkt. 11, Motion at 29-30); *28 U.S.C. § 1447(c)*. Plaintiffs' request is denied as the court finds that defendants did not lack an "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 711, 163 L. Ed. 2d 547 (2005)* ("Absent unusual circumstances, courts may award attorney's fees under *§ 1447(c)* only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.")

**This order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Plaintiffs' Motion [*8]  to Remand **(Document No. 11)** is **granted in part** and **denied in part**.

2. The above-captioned action shall be **remanded** to the Superior Court of the State of California for the County of Los Angeles, 111 N. Hill St., Los Angeles, CA 90012, for lack of subject matter jurisdiction pursuant to *28 U.S.C. § 1447(c)*. Plaintiffs' request for attorney's fees is **denied**.

3. The Clerk shall send a certified copy of this Order to the state court.

4. Except as set forth in this Order, all pending motions are denied as moot.

---

*End of Document*

# Saldana v. Glenhaven Healthcare LLC

United States Court of Appeals for the Ninth Circuit

October 21, 2021, Argued and Submitted, Pasadena, California; February 22, 2022, Filed

No. 20-56194

**Reporter**

2022 U.S. App. LEXIS 4631 *; __ F.4th __; 2022 WL 518989

JACKIE SALDANA; CELIA SALDANA; RICARDO SALDANA, JR.; MARIA SALDANA, as individuals and as successors and heirs to Ricardo Saldana, deceased, Plaintiffs-Appellees, v. GLENHAVEN HEALTHCARE LLC, a California corporation; CARAVAN OPERATIONS CORP., a California corporation; MATTHEW KARP, an individual; BENJAMIN KARP, an individual, Defendants-Appellants.

**Prior History:**  [*1] Appeal from the United States District Court for the Central District of California. D.C. No. 2:20-cv-05631-FMO-MAA.  Fernando M. Olguin, District Judge, Presiding.

*Saldana v. Glenhaven Healthcare LLC, 2020 U.S. Dist. LEXIS 216490, 2020 WL 6713995 (C.D. Cal., Oct. 14, 2020)*

**Disposition:** AFFIRMED.

# Case Summary

## Overview

HOLDINGS: [1]-The nursing home demonstrated that it was a private entity subject to government regulations, and during the COVID-19 pandemic it received additional regulations and recommendations from federal agencies, and thus, was not acting under a federal officer or agency, *28 U.S.C.S. § 1442*; [2]-The

district court's remand order for lack of federal subject matter jurisdiction under the Public Readiness and Emergency Preparedness Act based upon complete preemption was proper; [3]-Remand was proper because the complaint did not present an embedded federal question.

## Outcome

Judgment affirmed.

# LexisNexis® Headnotes

Civil Procedure > ... > Removal > Postremoval Remands > Appellate Review

Governments > Legislation > Interpretation

Civil Procedure > ... > Removal > Specific Cases Removed > Cases Involving Federal Officers

Civil Procedure > ... > Removal > Postremoval Remands > Jurisdictional Defects

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1*[ ] Postremoval Remands, Appellate Review

The appellate court reviews questions of statutory construction and subject matter jurisdiction de novo.

When the federal officer removal statute, *28 U.S.C.S. § 1442*, is one ground for removal, *28 U.S.C. § 1447(d)* permits appellate review of a district court's entire remand order. If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded, *28 U.S.C.S. § 1447(c)*.

Civil Procedure > ... > Removal > Specific Cases Removed > Cases Involving Federal Officers

Governments > Legislation > Interpretation

*HN2*[⬇]  Specific Cases Removed, Cases Involving Federal Officers

Under *28 U.S.C.S. § 1442(a)(1)*, the federal officer removal statute, an action commenced in state court may be removed to federal court when it is against or directed to: the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. The basic purpose of the statute is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority. (cleaned up). The federal officer removal statute is to be liberally construed, but a liberal construction nonetheless can find limits in the statute's language, context, history, and purposes.

Civil Procedure > ... > Removal > Specific Cases Removed > Cases Involving Federal Officers

*HN3*[⬇]  Specific Cases Removed, Cases Involving

Federal Officers

To remove a state court action under the federal officer removal statute, a defendant must establish that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.

Evidence > Burdens of Proof > Allocation

Evidence > Burdens of Proof > Preponderance of Evidence

*HN4*[⬇]  Burdens of Proof, Allocation

Defendants seeking removal still bear the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction are factually supported.

Civil Procedure > ... > Removal > Specific Cases Removed > Cases Involving Federal Officers

*HN5*[⬇]  Specific Cases Removed, Cases Involving Federal Officers

A person or entity who acts under a federal officer or agency is one who lawfully assists' a federal officer in the performance of his official duty and is authorized to act with or for federal officers or agents in affirmatively executing duties under federal law. The relationship between a federal officer or agency and a person or entity acting under the officer or agency typically involves subjection, guidance, or control. But simply complying with a law or regulation is not enough to bring a private person within the scope of the statute. A private firm's compliance (or noncompliance) with

federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase acting under a federal official. And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone.

Governments > Federal Government > Claims By & Against

### HN6[↓] Federal Government, Claims By & Against

It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction.

Civil Procedure > ... > Federal & State Interrelationships > Federal Common Law > Preemption

Constitutional Law > Supremacy Clause > Federal Preemption

Civil Procedure > ... > Subject Matter Jurisdiction > Federal Questions > Well Pleaded Complaint Rule

### HN7[↓] Federal Common Law, Preemption

Complete preemption is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim. Put another way, complete preemption applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action. To determine whether a claim is completely preempted, the court asks whether Congress (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action. Complete preemption is rare.

Civil Procedure > ... > Removal > Specific Cases Removed > Federal Questions

Constitutional Law > Supremacy Clause > Federal Preemption

Civil Procedure > ... > Subject Matter Jurisdiction > Federal Questions > Well Pleaded Complaint Rule

Civil Procedure > ... > Federal & State Interrelationships > Federal Common Law > Preemption

### HN8[↓] Specific Cases Removed, Federal Questions

Complete preemption is an exception to the well-pleaded complaint rule. Under the well-pleaded complaint rule, a civil action arises under federal law for purposes of federal question jurisdiction when a federal question appears on the face of the complaint. Under the rule, removal must be based on the plaintiff's claims and cannot be based on a defendant's federal defense. But the exception for complete preemption, the artful-pleading doctrine, allows removal where federal law completely preempts a plaintiff's state-law claim.

Public Health & Welfare Law > Social Services > Emergency Services

### HN9[↓] Social Services, Emergency Services

Passed by Congress in 2005, the Public Readiness and Emergency Preparedness (PREP) Act provides that a

covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure, *42 U.S.C.S. § 247d-6d(a)(1)*. Both covered countermeasure and covered person are terms defined in the Act, *§ 247d-6d(i)(1)-(2)*. The PREP Act is invoked when the HHS Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency, *§ 247d-6d(b)(1)*. The Secretary controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act. The Secretary's declaration may specify the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, *§ 247d-6d(b)(1)*. The PREP Act created the Covered Countermeasure Process Fund to compensate eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration, *§ 247d-6e(a)*.

Civil Procedure > ... > Justiciability > Exhaustion of Remedies > Administrative Remedies

Public Health & Welfare Law > Healthcare > Public Health Security > Communicable Diseases

## *HN10*[⤓] Exhaustion of Remedies, Administrative Remedies

*42 U.S.C.S. § 247d-6d(d)(1)* provides that the sole exception to the immunity from suit and liability of covered persons shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct by such covered person. Such an action shall be filed and maintained only in the United States District Court for the District of Columbia, *§ 247d-6d(e)(1)*. The term willful misconduct is defined in the Act, *§ 247d-6d(c)(1)(A)*. An individual may not bring a suit under *§ 247d-6d(d)(1)* unless the individual has exhausted the remedies available under *§ 247d-6e(a)*, the Covered Countermeasure Process Fund, § 247d-6e(d)(1).

Administrative Law > Judicial Review > Standards of Review > Deference to Agency Statutory Interpretation

Constitutional Law > Supremacy Clause > Federal Preemption

Civil Procedure > ... > Subject Matter Jurisdiction > Federal Questions > Well Pleaded Complaint Rule

## *HN11*[⤓] Standards of Review, Deference to Agency Statutory Interpretation

But complete preemption is really a jurisdictional rather than a preemption doctrine. And an agency's opinion on federal court jurisdiction is not entitled to Chevron deference.

Public Health & Welfare Law > Social Services > Emergency Services

## *HN12*[⤓] Social Services, Emergency Services

Instead of deferring to an opinion of the Office of General Counsel, the appellate court applies the two-part test articulated in City of Oakland: (1) did Congress intend to displace a state-law cause of action and (2) did Congress provide a substitute cause of action? Turning

to the statute's text, the Public Readiness and Emergency Preparedness Act states that it provides immunity under certain conditions for covered persons who use covered countermeasures, *42 U.S.C.S. § 247d-6d(a)(1)*. Subsection (d) is the only subsection that explicitly states that there shall be an exclusive Federal cause of action, limited to claims against covered persons for willful misconduct, as the terms are defined in the Act, *§ 247d-6d(d)*.

Constitutional Law > Supremacy Clause > Federal Preemption

Public Health & Welfare Law > Social Services > Emergency Services

*HN13*[⤓] Supremacy Clause, Federal Preemption

Congress intended a federal claim only for willful misconduct claims and not claims for negligence and recklessness, *42 U.S.C.S. § 247d-6d(c)(1)(B)*. An administrative compensation fund, not an exclusive federal cause of action, provides the only redress for claims brought under the Act, other than those alleging willful misconduct. Thus, under this court's two-part test, the Public Readiness and Emergency Preparedness Act is not a complete preemption statute.

Governments > Local Governments > Employees & Officials

Public Health & Welfare Law > Social Services > Emergency Services

*HN14*[⤓] Local Governments, Employees & Officials

Whether the claim is preempted by the Public Readiness and Emergency Preparedness Act turns on whether any of the conduct alleged in the complaint fits

the statute's definitions for such a claim.

Civil Procedure > ... > Subject Matter Jurisdiction > Federal Questions > Well Pleaded Complaint Rule

Constitutional Law > ... > Jurisdiction > Subject Matter Jurisdiction > Federal Questions

*HN15*[⤓] Federal Questions, Well Pleaded Complaint Rule

Under this doctrine, federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The well-pleaded complaint rule applies when determining whether the embedded federal question doctrine applies.

Civil Procedure > ... > Removal > Specific Cases Removed > Federal Questions

*HN16*[⤓] Specific Cases Removed, Federal Questions

A federal defense is not a sufficient basis to find embedded federal question jurisdiction.

Summary:

SUMMARY[**]

**Federal Subject Matter Jurisdiction**

The panel affirmed the district court's order remanding a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

removed case to state court for lack of federal subject matter jurisdiction.

Relatives of Ricardo Saldana, who allegedly died from COVID-19 at Glenhaven Healthcare nursing home, sued Glenhaven and other defendants in California state court, alleging state-law causes of action based on the allegation that Glenhaven failed to adequately protect Saldana. Glenhaven removed the case to federal court.

Affirming the district court's order granting plaintiffs' motion to remand the case to state court, the panel rejected Glenhaven's argument that the district court had three grounds for federal jurisdiction. First, the panel held that the district court lacked jurisdiction under the federal officer removal statute, *28 U.S.C. § 1442*, because Glenhaven did not act under a federal officer or agency's directions when it complied with mandatory directives to nursing homes from the Centers for Medicare and Medicaid Services, the Centers for Disease [*2] Control and Prevention, and the Department of Health and Human Services. Glenhaven's status as a critical infrastructure entity did not establish that it acted as a federal officer or agency, or that it carried out a government duty.

Second, the panel held that plaintiffs' claims were not completely preempted by the *Public Readiness and Emergency Preparedness Act*, which provides immunity from suit when the HHS Secretary determines that a threat to health constitutes a public health emergency, but provides an exception to this immunity for an exclusive federal cause of action for willful misconduct. In March 2020, the Secretary issued a declaration under the PREP Act "to provide liability immunity for activities related to medical countermeasures against COVID-19." The panel held that the HHS Office of General Counsel's Advisory Opinion on complete preemption was not entitled to *Chevron* deference because it was an opinion on federal court jurisdiction. Instead, the panel applied the two-part test set forth in *City of Oakland v. BP PLC, 969 F.3d 895 (9th Cir. 2020)*. The panel concluded that in enacting the PREP Act, Congress did not intend to displace the non-willful misconduct claims brought by plaintiffs related to the public health emergency, [*3] nor did it provide substitute causes of action for plaintiffs' claims. Thus, the federal statutory scheme was not so comprehensive that it entirely supplanted state law causes of action.

Third, the panel held that the district court did not have jurisdiction under the embedded federal question doctrine, under which federal jurisdiction over a state law claim will lie if a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

**Counsel:** Lann G. McIntyre (argued), Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Kathleen M. Walker, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Defendants-Appellants.

Adam R. Pulver (argued), Allison M. Zieve, and Scott L. Nielson, Public Citizen Litigation Group, Washington, D.C.; Scott C. Glovsky, Law Offices of Scott C. Glovsky, Claremont, California; for Plaintiffs-Appellees.

Mark E. Reagan and Jeffrey Lin, Hooper Lundy & Bookman P.C., San Francisco, California, for Amici Curiae California Association of Health Facilities and American Health Care Association.

Eric M. Carlson, Justice in Aging, Los Angeles, California, [*4] for Amicus Curiae Justice in Aging.

**Judges:** Before: Ryan D. Nelson and Lawrence

VanDyke, Circuit Judges, and Karen E. Schreier,[*] District Judge.

**Opinion by:** SCHREIER

# Opinion

SCHREIER, District Judge:

Glenhaven Healthcare LLC, Caravan Operations Corp., Matthew Karp, and Benjamin Karp (collectively, Glenhaven) appeal the district court's order remanding this case to state court for lack of federal subject matter jurisdiction. We have jurisdiction under *28 U.S.C. § 1447(d)*, and affirm. [1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ricardo Saldana was a resident of Glenhaven Healthcare nursing home from 2014 to 2020. Saldana died at the Glenhaven nursing home on April 13, 2020, allegedly from COVID-19. In June 2020, four of Saldana's relatives, Jackie Saldana, Celia Saldana, Ricardo Saldana, Jr., and Maria Saldana (the Saldanas), sued Glenhaven in California Superior Court for Los Angeles County. The Saldanas allege that Glenhaven failed to adequately protect Ricardo Saldana from the COVID-19 virus. The complaint states four state-law causes of action: elder abuse, willful misconduct, custodial negligence, and wrongful death.

Glenhaven removed the case to the United States District Court for the Central District of California in June

2020, and [*5] the Saldanas moved to remand the case to state court. The district court found that it did not have subject matter jurisdiction to hear the case and granted the Saldanas' motion to remand. Glenhaven appeals, arguing that the district court has three independent grounds for federal jurisdiction: federal officer removal, complete preemption of state law, and the presence of an imbedded federal question. We agree with the district court and affirm.

## II. STANDARD OF REVIEW

*HN1*[↑] We review questions of statutory construction and subject matter jurisdiction de novo. *City of Oakland v. BP PLC, 969 F.3d 895, 903 (9th Cir. 2020)*. When the federal officer removal statute, *28 U.S.C. § 1442*, is one ground for removal, *§ 1447(d)* permits appellate review of a district court's entire remand order. *BP P.L.C. v. Mayor of Balt., 141 S. Ct. 1532, 1538, 209 L. Ed. 2d 631 (2021)*. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *28 U.S.C. § 1447(c)*.

## III. DISCUSSION

## A. Federal Officer Removal

## 1. Legal Standard

*HN2*[↑] Under *28 U.S.C. § 1442(a)(1)*, the federal officer removal statute, an action commenced in state court may be removed to federal court when it is "against or directed to . . . : [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in [*6] an official or individual capacity, for or relating to any act under color of such office . . . ." The

---

[*] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

[1] We also **GRANT** the pending motions for judicial notice. Docket 18; Docket 22.

"basic purpose" of the statute "is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority." *Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 150, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007)* (cleaned up). The federal officer removal statute is to be "liberally construed," but "a liberal construction nonetheless can find limits in [the statute's] language, context, history, and purposes." *Id. at 147*.

HN3[↑] To remove a state court action under the federal officer removal statute, a defendant must establish that "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Stirling v. Minasian, 955 F.3d 795, 800 (9th Cir. 2020)* (quoting *Fidelitad, Inc. v. Insitu, Inc., 904 F.3d 1095, 1099 (9th Cir. 2018)*). Here, the parties do not dispute that each defendant is a "person" under the statute. *See 1 U.S.C. § 1* ("person" includes "corporations, companies, associations, firms, partnerships . . . as well as individuals"). HN4[↑] Defendants [*7] seeking removal "still bear the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction are factually supported." *Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021)* (cleaned up).

## 2. Whether Glenhaven Acted Under a Federal Officer's Directions

HN5[↑] To determine whether there was a causal nexus between Glenhaven's actions and the Saldanas'

claims, the court first considers whether Glenhaven's actions were taken "pursuant to a federal officer's directions," *Stirling, 955 F.3d at 800*, or while "acting under that officer." *28 U.S.C. § 1442(a)(1)*. A person or entity who acts under a federal officer or agency is one "'who lawfully assist[s]' a federal officer 'in the performance of his official duty'" and is "authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law." *Watson, 551 U.S. at 143* (cleaned up). The relationship between a federal officer or agency and a person or entity "acting under" the officer or agency "typically involves subjection, guidance, or control." *Id. at 152*. But "simply *complying*" with a law or regulation is not enough to "bring a private person within the scope of the statute." *Id.* In *Watson* the Supreme Court stated:

> A private firm's compliance (or noncompliance) [*8] with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.

*Id. at 153*. "The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.*

Glenhaven argues that the federal government "conscript[ed] . . . private entities like Glenhaven to join in the fight [against COVID-19] through detailed and specific mandatory directives to nursing homes on the use and allocation of PPE, the administration of COVID-19 testing, intervention protocols, and virtually every other aspect of the operations of nursing homes during the pandemic." Though it acknowledges that compliance with federal laws, regulations, and rules does not "by itself" bring a defendant under the federal officer removal statute, Glenhaven claims that the

"unprecedent[ed] circumstances" of COVID-19 resulted in federal directives and operational control amounting to more than compliance with government regulations.

Glenhaven points to memoranda it received from [*9] the Centers for Medicare and Medicaid Services (CMS), the Centers for Disease Control and Prevention (CDC), and the Department of Health and Human Services (HHS) during the COVID-19 pandemic to show that the "federal government and its agencies . . . became hyper-involved in the operational activities of nursing facilities in response to the pandemic." But the agency communications Glenhaven relies on show nothing more than regulations and recommendations for nursing homes, covering topics such as COVID-19 testing, use and distribution of personal protective equipment, and best practices to reduce transmission within congregate living environments. For example, one CMS memo identifies what healthcare staff "should" do in response to the pandemic, and it states what CMS "expects," "encourages," "advise[s]," and "recommend[s]." Similarly, a CDC communication cited by Glenhaven identifies "recommendations" and steps that healthcare centers "should" take. Another memorandum published by the California Department of Public Health states that the agency "ensure[s] compliance with state licensing laws and federal certification regulations" on behalf of CMS. *Licensing and Certification Program [*10]*, Cal. Dep't of Pub. Health (Dec. 17, 2020), https://www.cdph.ca.gov/Progr ams/CHCQ/LCP/Pages/LandCProgramHome.aspx. Without more than government regulations and recommendations, Glenhaven has failed to establish that it was "acting under" a federal official, and it has not identified a duty of the federal government that it performed.

Glenhaven also claims that, as a nursing home, its designation as part of the national critical infrastructure necessarily means that it acted on behalf of a federal official or that it carried out a government duty. The Saldanas do not dispute that nursing homes, including Glenhaven, are part of the nation's critical infrastructure. Glenhaven relies on a memorandum from the Cybersecurity and Infrastructure Security Agency (CISA) stating that the list of critical infrastructure workers was developed as "guidance" to "help state and local jurisdictions and the private sector identify and manage their essential workforce while responding to COVID-19." *CISA Releases Guidance on Essential Critical Infrastructure Workers During COVID-19*, Cybersecurity & Infrastructure Sec. Agency (Oct. 25, 2021), https://www.cisa.gov/news/2020/03/19/cisa-release s-guidance-essential-critical-infrastructure-workers-during-covid-19. [*11] Notably, the memorandum also states that the national critical infrastructure list "does not impose any mandates on state or local jurisdictions or private companies," such as Glenhaven. *Id.*

[*HN6*] "It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Buljic v. Tyson Foods, Inc., 22 F.4th 730, 740 (8th Cir. 2021)*; *see also Maglioli v. All. HC Holdings LLC, 16 F.4th 393, 406 (3d Cir. 2021)*. Thus, Glenhaven's status as a critical infrastructure entity does not establish that it acted under a federal officer or agency, or that it carried out a government duty.

Glenhaven has failed to substantiate its claims that it was conscripted to assist a federal officer or agency in performance of a government duty or that it was authorized to act for a federal officer. All that Glenhaven has demonstrated is that it operated as a private entity subject to government regulations, and that during the COVID-19 pandemic it received additional regulations

and recommendations from federal agencies. Thus, Glenhaven was not "acting under" a federal officer or agency as contemplated by the federal officer removal statute. And because Glenhaven did not act under a federal officer, there is no causal nexus [*12] that allows removal under *28 U.S.C. § 1442*.

## B. Preemption Under the PREP Act

### 1. Legal Standard

Glenhaven argues that this case was properly removed to federal court because the Saldanas' claims are completely preempted by the *Public Readiness and Emergency Preparedness (PREP) Act, 42 U.S.C. §§ 247d-6d*, *247d-6e*. *HN7*[↑] "Complete preemption is 'really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace *any* state-law claim.'" *Dennis v. Hart, 724 F.3d 1249, 1254 (9th Cir. 2013)* (emphasis added) (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009)*). Put another way, "[c]omplete preemption . . . applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 947 (9th Cir. 2014)* (quoting *Dennis, 724 F.3d at 1254*). To determine whether a claim is completely preempted, the court asks whether Congress "(1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland, 969 F.3d at 906* (citing *Hansen v. Grp. Health Coop., 902 F.3d 1051, 1057 (9th Cir. 2018)*). Complete preemption is "rare." *Hansen, 902 F.3d at 1057* (quoting *Retail Prop. Tr., 768 F.3d at 947*). The Supreme Court has identified only three complete preemption statutes: *§ 301 of the Labor Management Relations Act*, *§ 502(a) of the Employee Retirement Income Security Act of 1974* (ERISA), and *§§ 85* and *86 of the National Bank Act*. *City of Oakland, 969 F.3d at 905-06*.

*HN8*[↑] Complete preemption is an exception to the well-pleaded complaint rule. *Id. at 905*. Under the well-pleaded [*13] complaint rule, a civil action arises under federal law for purposes of federal question jurisdiction when a federal question appears on the face of the complaint. *Id. at 903* (citing *Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)*). Under the rule, removal must be based on the plaintiff's claims and cannot be based on a defendant's federal defense. *Id. at 903-04*. But the exception for complete preemption, the "artful-pleading doctrine[,] . . . allows removal where federal law completely preempts a plaintiff's state-law claim." *Id. at 905* (quoting *Rivet v. Regions Bank of La., 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998)*).

### 2. The PREP Act

*HN9*[↑] Passed by Congress in 2005, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." *42 U.S.C. § 247d-6d(a)(1)*. Both "covered countermeasure" and "covered person" are terms defined in the Act. *See § 247d-6d(i)(1)-(2)*. The PREP Act is invoked when "the [HHS] Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency . [*14] . . ." *§ 247d-6d(b)(1)*. The

Secretary "controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act." *Maglioli, 16 F.4th at 401*. The Secretary's declaration "may specify[] the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." *§ 247d-6d(b)(1)*. The PREP Act created the Covered Countermeasure Process Fund to compensate "eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration . . . ." *§ 247d-6e(a)*.

*HN10*[↑] *Section 247d-6d(d)(1)* provides that "the sole exception to the immunity from suit and liability of covered persons . . . shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." Such an action "shall be filed and maintained only in the United States District Court for the District of Columbia." *§ 247d-6d(e)(1)*. The term "willful misconduct" is defined in the Act. *§ 247d-6d(c)(1)(A)*. An individual may not bring a suit under *§ 247d-6d(d)(1)* unless the individual has exhausted the remedies available under *§ 247d-6e(a)*, the Covered Countermeasure Process Fund. *§ 247d-6e(d)(1)*.

In March 2020, the Secretary issued a declaration under the PREP [*15] Act "to provide liability immunity for activities related to medical countermeasures against COVID-19." Declaration Under the *Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020)*. The declaration provided immunity for covered persons for the use of covered measures, including "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . ." *Id.* at 15,202. The Secretary

has issued subsequent amended declarations throughout the pandemic. *See Seventh Amendment* to Declaration Under the *Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021)*.

### 3. Whether the PREP Act is a Complete Preemption Statute

Glenhaven's complete preemption argument relies on the HHS Secretary's and the HHS Office of General Counsel's respective conclusions that the PREP Act is a complete preemption statute. *Fifth Amendment* to the Declaration Under the *Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7874 (Feb. 2, 2021)*; Dep't Health & Hum. Servs., General Counsel Advisory Opinion 21-01 (Jan. 8, 2021). *HN11*[↑] But "[c]omplete preemption is really a jurisdictional rather than a preemption doctrine[.]" *Dennis, 724 F.3d at 1254* (internal quotation omitted). And an agency's opinion on federal court jurisdiction is not entitled to *Chevron* deference. *Dandino, Inc. v. United States DOT, 729 F.3d 917, 920 n.1 (9th Cir. 2013)*. Thus, Glenhaven's reliance on the Advisory Opinion is misplaced and not a sufficient basis to establish complete [*16] preemption and thus federal jurisdiction.

*HN12*[↑] Instead of deferring to an opinion of the Office of General Counsel, this court applies the two-part test articulated in *City of Oakland*: (1) did Congress intend to displace a state-law cause of action and (2) did Congress provide a substitute cause of action? *969 F.3d at 906*. Turning to the statute's text, the PREP Act states that it provides *immunity* under certain conditions for "covered person[s]" who use "covered countermeasure[s]." *42 U.S.C. § 247d-6d(a)(1)*.

Subsection (d) is the only subsection that explicitly states that there shall be an "exclusive Federal cause of action," limited to claims against "covered persons" for "willful misconduct," as the terms are defined in the Act. § 247d-6d(d). The provision of one specifically defined, exclusive federal cause of action undermines Glenhaven's argument that Congress intended the Act to completely preempt all state-law claims related to the pandemic. HN13[↑] The text of the statute shows that Congress intended a federal claim only for willful misconduct claims and not claims for negligence and recklessness. § 247d-6d(c)(1)(B). An administrative compensation fund, not an exclusive federal cause of action, provides the only redress for claims brought under the Act, other than those alleging "willful [*17] misconduct." The PREP Act neither shows the intent of Congress to displace the non-willful misconduct claims brought by the Saldanas related to the public health emergency, nor does it provide substitute causes of action for their claims. Thus, under this court's two-part test, the PREP Act is not a complete preemption statute.

Glenhaven argues that the PREP Act may preempt one of the Saldanas' claims—the second cause of action under state law for willful misconduct. HN14[↑] Whether the claim is preempted by the PREP Act turns on whether any of the conduct alleged in the complaint fits the statute's definitions for such a claim. But finding that one claim *may* be preempted is different than finding that the "federal statutory scheme is so comprehensive that it *entirely supplants* state law causes of action," such as the Saldanas' other causes of action for elder abuse, custodial negligence, and wrongful death. Retail Prop. Tr., 768 F.3d at 947 (emphasis added) (quoting Dennis, 724 F.3d at 1254); *see also* Caterpillar, 482 U.S. at 393 (distinguishing between complete preemption and raising a federal defense); Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir. 1998) (distinguishing between complete preemption

and "conflict preemption" of a particular claim). Thus, the district court's remand order for lack of federal subject matter jurisdiction [*18] based upon complete preemption was proper.

## C. Embedded Federal Question

Glenhaven argues that the district court has jurisdiction under the embedded federal question doctrine. HN15[↑] Under this doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013). The well-pleaded complaint rule applies when determining whether the embedded federal question doctrine applies. Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund, 636 F.3d 538, 542 (9th Cir. 2011).

Here, the Saldanas' complaint states four causes of action: elder abuse, willful misconduct, custodial negligence, and wrongful death. The claims in the complaint are raised under California law and do not raise questions of federal law on the face of the complaint. HN16[↑] Glenhaven seeks to raise a federal defense under the PREP Act, but a federal defense is not a sufficient basis to find embedded federal question jurisdiction. Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1090 (9th Cir. 2009).

Glenhaven argues that the Saldanas' willful misconduct claim raises a federal issue under the PREP Act. Glenhaven does not identify how a right or immunity created by the PREP Act must be an essential element [*19] of the willful misconduct claim as stated in the complaint. On its face, the issue is not a "substantial" part of the Saldanas' complaint because,

according to the complaint, only some of the steps Glenhaven allegedly took, and did not take, may have involved a "covered person," under the PREP Act. Thus, remand is proper because the complaint does not present an embedded federal question.

## IV. CONCLUSION

Glenhaven did not act under a federal officer or carry out a federal duty when it provided care to Ricardo Saldana. The PREP Act does not completely preempt the Saldanas' claims, and the possible preemption of one claim cannot be determined by this court or the district court. And there is no embedded federal question in the Saldanas' complaint. Thus, the district court lacked subject matter jurisdiction, and the suit was properly remanded to state court.

**AFFIRMED**.

---

End of Document

Exhibit 2

# *Reed v. Sunbridge Hallmark Health Servs., LLC*

United States District Court for the Central District of California

June 25, 2021, Decided; June 25, 2021, Filed

Case No. CV 21-3702-JFW(AGRx)

**Reporter**

2021 U.S. Dist. LEXIS 119092 *; 2021 WL 2633156

Lawrence Reed, et al. -v- Sunbridge Hallmark Health Services, LLC

**Prior History:** *Reed v. Sunbridge Hallmark Health Servs., LLC, 2021 U.S. Dist. LEXIS 93543 (C.D. Cal., May 14, 2021)*

**Counsel:** [*1] For Lawrence Reed, by and through his Successor in Interest Olive Reed, individually, Olive Reed, individually, Plaintiffs: Allison Farwell, LEAD ATTORNEY, Potter Handy LLP, San Diego, CA; Mark D Potter, Center for Disability Access, San Diego, CA.

For Sunbridge Hallmark Health Services, LLC, doing business as, Playa Del Rey Center, Defendant: Evan J. Topol, Kim Suzanne Cruz, William C Wilson, LEAD ATTORNEYS, Ryan G. Canavan, Wilson Getty LLP, San Diego, CA.

**Judges:** HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOHN F. WALTER

# Opinion

**CIVIL MINUTES -- GENERAL**

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND OF**

THE CASE TO STATE COURT [filed 5/26/2021; Docket No. 19];

On May 26, 2021, Plaintiffs Lawrence Reed, by and through his Successor-in-Interest, Olive Reed, and Olive Reed (collectively, "Plaintiffs") filed a Motion for Remand of the Case to State Court. On June 7, 2021, Defendant Sunbridge Hallmark Health Services, LLC dba Playa Del Rey Center ("Defendant" or "Playa Del Rey Center") filed its Opposition. On June 14, 2021, Plaintiffs filed a Reply. Pursuant to *Rule 78 of the Federal Rules of Civil Procedure* and *Local Rule 7-15*, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared [*2] for June 28, 2021 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual and Procedural Background

On January 29, 2021, Plaintiffs filed a Complaint against Defendant in Los Angeles County Superior Court, alleging claims for: (1) Statutory Elder Abuse/Neglect (*California Welfare & Institutions Code §§ 15600, et seq.*); (2) negligence; and (3) wrongful death. In their Complaint, Plaintiffs allege that Lawrence Reed (the "Decedent") was a resident of Playa Del Rey Center, a skilled nursing facility. Plaintiffs allege that Playa Del

2021 U.S. Dist. LEXIS 119092, *2

Rey Center failed to conduct nursing assessments, properly monitor the Decedent, notify the physician of changes in his condition, and implement infection prevention protocols and care plans. Complaint ¶¶ 19-36, 42, 50, 60, 76. Plaintiffs allege that, as a result of the Playa Del Rey Center's negligence and neglect, the Decedent "suffered an entirely preventable clostridium difficile colitis infection, developed contractures, suffered an avoidable Stage IV sacral pressure wound, and developed an entirely preventable coronavirus disease 2019 ('COVID-19') infection [*3] which lead to his death as well as other injuries . . . ." Complaint ¶ 17.

On April 30, 2021, Defendant filed a Notice of Removal, alleging that this Court has jurisdiction on the grounds that: (1) Plaintiffs' claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), *42 U.S.C. §§ 247d-6d* and *247d-6e*; (2) the action raises a substantial and important federal issue, citing *Grable & Sons Metal Products v. Darue Engineering & Manufacturing, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)*; and (3) removal is proper under the federal officer statute (*28 U.S.C. § 1442(a)(1)*) because Defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct. Plaintiffs challenge the removal of this action and move to remand.

**B. The PREP Act**

Passed in 2005, the PREP Act authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency." *42 U.S.C. § 247d-6d(b)*. If applicable, the PREP Act provides immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the

use by an individual of a covered countermeasure."[1] *42 U.S.C. § 247d-6d(a)(1)*. If immunity applies, the injured person or their survivors may seek compensation from the Countermeasures Injury Compensation Program [*4] - a regulatory program that provides reimbursement for some losses associated with the use of covered countermeasures. *42 U.S.C. § 247d-6e*. The only exception to the Act's immunity is when the injury occurs through willful misconduct. In these instances, the PREP Act provides procedural rules that govern the injured person's claim. *42 U.S.C. § 247d-6d(d)*. For example, they must file in the U.S. District Court for the District of Columbia and the burden of proof is clear and convincing evidence. *Id.*; *42 U.S.C. § 247d-6d(c)*.

On March 10, 2020, the HHS Secretary issued a Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("March 10, 2020 Declaration"), which declared the COVID-19 pandemic a public health emergency under the PREP Act. *85 Fed. Reg. 15198-01*. On December 3, 2020, the HHS Secretary issued a Fourth Amendment to his March 10, 2020 Declaration (the "Fourth Amendment").[2] *85 Fed.*

---

[1] Under the PREP Act, covered countermeasures include: (1) a qualified "pandemic or epidemic product"; (2) a "security countermeasure"; (3) a drug, biological product, or device that the United States Food and Drug Administration ("FDA") has authorized for emergency use; and (4) a "respiratory protective device" that is approved by the National Institute for Occupational Safety and Health ("NIOSH"). *42 U.S.C. § 247d-6d(i)(1)*.

[2] To date, the HHS Secretary has issued seven amendments to the Declaration. *See* First Amendment, **85 Fed. Reg. 21012 (Apr. 15, 2020)**; Second Amendment, *85 Fed. Reg. 35100 (June 8, 2020)*; *Third Amendment, 85 Fed. Reg. 52136 (Aug. 24, 2020)*; Fourth Amendment, *85 Fed. Reg. 79190 (Dec. 9,*

Reg. at 79190 (Dec. 9, 2020). In the Fourth Amendment, the HHS Secretary defined the "administration" of a covered countermeasure as follows:

> Administration of the Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management [*5] and operation of locations for the purpose of distributing and dispensing countermeasures.

Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d. For example, consider a situation where there is only one dose . . . of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure,

particularly if done in accordance with a public health authority's directive, can fall within the [*6] PREP Act and this Declaration's liability protections.

85 Fed. Reg. at 79197. In the Fourth Amendment, the HHS Secretary also: (1) opined that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg., 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005), in having a uniform interpretation of the PREP Act;" and (2) clarified that the Declaration "must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions)" and expressly incorporated the Advisory Opinions for that purpose. 85 Fed. Reg. at 79191, 79197.

On January 8, 2021, HHS's Office of the General Counsel ("OGC") issued an Advisory Opinion, which opines that the PREP Act "is a 'complete preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." Exhibit HH (Docket No. 38-34). The January 8, 2021 Advisory Opinion also opines that "the Fourth Amendment to the Secretary's Declaration supports the Grable doctrine." Id. The Advisory Opinion, however, cautions that "[i]t is not a final agency action or a final order. It does not have the force or effect of [*7] law." Id.

## II. LEGAL STANDARD

A motion to remand is the proper procedure for challenging removal. See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1038 (9th Cir. 1995). The removal statute is strictly

---

2020); Fifth Amendment, 86 Fed. Reg. 7872 (Feb. 2, 2021); Sixth Amendment, 86 Fed. Reg. 9516 (Feb. 16, 2021); Seventh Amendment, 86 Fed. Reg. 14462 (Mar. 16, 2021)

2021 U.S. Dist. LEXIS 119092, *7

construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992)*; *see also Prize Frize, Inc. v. Matrix, Inc., 167 F.3d 1261, 1265 (9th Cir.1999)*. Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus, 980 F.2d at 566*; *see also Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996)* (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## III. DISCUSSION

The Court concludes that Defendant has failed to establish that this action was properly removed under any of its three theories of jurisdiction.

### A. Complete Preemption

In its first theory, Defendant argues that this action was properly removed based on federal question jurisdiction because Plaintiffs' state law claims are completely preempted by the PREP Act. The Court rejects this argument.

### 1. Legal Standard for Complete Preemption

"Removal based on federal-question jurisdiction is reviewed [*8] under the longstanding well-pleaded complaint rule." *Hansen v. Grp. Health Coop., 902 F.3d 1051, 1057 (9th Cir. 2018)*. The "well-pleaded complaint rule,' provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v.*

*Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2003)* (quoting *Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)*). The federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* (quoting *Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S. Ct. 96, 81 L. Ed. 70 (1936)* (holding that the federal controversy cannot be "merely a possible or conjectural one")). "Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to have the cause heard in state court' 'by eschewing claims based on federal law.'" *Id.* (quoting *Caterpillar, 482 U.S. at 399*). As the Supreme Court stated in *Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)*:

> Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint . . . . [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*482 U.S. at 392-93*.

Complete preemption is an exception to the well-pleaded complaint rule. "[T]he complete preemption doctrine, [*9] provides that 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243-44 (9th Cir. 2009)* (citing *Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998)* (quoting *Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)*). If complete preemption applies, "the state-law claim is simply 'recharacterized' as the federal claim that

Congress made exclusive." *Hansen, 902 F.3d at 1058* (*quoting Vaden v. Discover Bank, 556 U.S. 49, 61, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)*). "[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption," the state claim can be removed. *Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)*.

Complete preemption is extremely "rare." *Hansen, 902 F.3d at 1057*. The Supreme Court has found complete preemption applicable to an extremely limited number of federal statutes. *See City of Oakland v. BP PLC, 969 F.3d 895, 905 (9th Cir. 2020)* (noting that the Supreme Court has only determined that complete preemption applies to three statutes -- *§ 301* of the Labor Management Relations Act, *29 U.S.C. § 185*, *§ 502(a)* of the Employee Retirement Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act). While discussing the limited nature of the doctrine, the Ninth Circuit held that "complete preemption for purposes of federal jurisdiction under *Section 1331* exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland, 969 F.3d at 906* (*citing Hansen, 902 F.3d at 1057*).

Importantly, before complete preemption can apply to a plaintiff's state law claims, the "the [*10] claims at issue must fall within the scope of the relevant federal statute." *Jackson v. Big Blue Healthcare, Inc., 2020 U.S. Dist. LEXIS 150018, 2020 WL 4815099, at *3-4 (D. Kan. Aug. 19, 2020)* (*citing Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 9 n.5, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)*).

## 2. Plaintiffs' Claims Are Not Completely Preempted

The parties disagree as to whether Plaintiffs' claims fall within the scope of the PREP Act. Plaintiffs argue the PREP Act does not apply to their claims because their claims are based on a failure to properly implement an effective infection control program, failure to properly train staff, and failure to employ adequate staff, rather than the use or misuse of any covered countermeasure. Defendant argues that the PREP Act applies to Plaintiffs' claims because failure to properly implement an effective infection control program by its very nature implicates the use of covered countermeasures such as, for example, personal protective equipment ("PPE"), COVID-19 testing, and/or management and operation of Defendants' countermeasures program.

Although the HHS Secretary's *Fourth Amendment* makes clear that an "inaction claim" is not necessarily beyond the scope of the PREP Act, such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual [*11] because it was administered to another individual. *85 Fed. Reg. at 79197* (illustrating a causal relationship between (1) administering and (2) not administering a covered countermeasure where person-A "was able to receive the [single covered countermeasure] only because it was not administered to" person B). Thus, pursuant to the HHS Secretary's December 3, 2020 Amendment, there is only immunity for "inaction claims" when the failure to administer a covered countermeasure to one individual has "a close causal relationship" to the administration of that covered countermeasure to another individual. *Anson v. HCP Prairie Village KS Opco LLC, 523 F. Supp. 3d 1288, 2021 U.S. Dist. LEXIS 17056, 2021 WL 308156 (D. Kan. Jan. 29, 2021)*. For example, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public authority's directive, can fall within the PREP Act and th[e] Declaration's liability protections." *85 Fed. Reg. at 79197*; Exhibit HH (Docket No. 28-34). Other "inaction

2021 U.S. Dist. LEXIS 119092, *11

claims" may not.

In this case, Plaintiffs do not allege that Decedent's death was causally connected to the administration or use of any covered countermeasure. Instead, Plaintiffs allege "precisely the opposite" - that it was inaction, rather than action, by Defendant that caused Decedent's death. *Anson v. HCP Prairie Village KS Opco LLC, 2021 U.S. Dist. LEXIS 17056, 2021 WL 308156 (D. Kan. Jan. 29, 2021)* (quoting *Eaton v. Big Blue Healthcare, Inc., 480 F. Supp. 3d 1184, 2020 WL 4815085, at *7-8 & n.13 (D. Kan. Aug. 19, 2020)*). Indeed, the gravamen [*12] of Plaintiffs' Complaint (as it relates to COVID-19) is that Defendant failed to implement an infection prevention and control program or care program for COVID-19. *See, e.g.*, Complaint ¶¶ 15, 31, 34, 37, 53-56. Numerous courts have concluded that allegations like these do not fall within the scope of the PREP Act. *See, e.g., Estate of McCalebb v. AG Lynwood, LLC, 2021 U.S. Dist. LEXIS 47239, 2021 WL 911951, at *1, 5 (C.D. Cal. Mar. 1, 2021)* (concluding that the action does not appear to be about a purposeful allocation of scarce resources where Plaintiff alleged that, *inter alia*, Defendant failed to follow, implement, and adhere to all CDC guidelines on how to protect and treat Decedent in light of the risk of COVID-19, and where "the gravamen of the Complaint is that Defendant was generally neglectful in operating the Facility"); *Robertson v. Big Blue Healthcare, Inc., 523 F. Supp. 3d 1271, 2021 U.S. Dist. LEXIS 36151, 2021 WL 764566, at *2, 7-9 (D. Kan. Feb. 26, 2021)* (concluding that claims premised on a failure to take preventative measures to stop the spread of COVID-19, including allegations that the defendants failed to "follow proper infection control protocols" and "provide personal protective equipment ('PPE') to staff" do not fall within the scope of the PREP Act).

Although Plaintiffs mention certain covered countermeasures in their complaint, and allege that Defendant failed to "properly to properly enforce and enable PPE," [*13] *see, e.g.*, Complaint at ¶ 60, there are no allegations linking Decedent's death to the *use* of that personal protective equipment or linking Decedent's death to the *purposeful* allocation of personal protective equipment to other individuals. *See Estate of McCalebb, 2021 U.S. Dist. LEXIS 47239, 2021 WL 911951, at *5* ("While Plaintiffs refer to the failure to provide adequate PPE (and training in its use), this allegation is one of 19 claims of negligence in a complaint that describes overall inattention rather than conscious decision-making about covered countermeasures while delivering care."); *Anson, 2021 U.S. Dist. LEXIS 17056, 2021 WL 308156, at *10* (quotations and citations omitted ("[E]ven if the court were prepared to assume that the Petition alleges conduct that qualifies as administration or use of a covered countermeasure" within the meaning of the PREP Act, the statute still requires a causal connection between the injury and the use or administration of covered countermeasures."). As one district court stated:

> Suffice it to say that the Court is not convinced that a facility using covered countermeasures somewhere in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility. The PREP Act still requires a causal connection between the injury and the use or administration [*14] of covered countermeasures, and that link is not present under Defendants' interpretation.

*Brown v. Big Blue Healthcare, 480 F. Supp. 3d 1196, 1206 (D. Kan. 2020)*.

More importantly, even assuming that the PREP Act might arguably provide Defendant immunity on some of

Plaintiffs' claims,[3] the Court concludes that the PREP Act does not satisfy the Ninth Circuit's two pronged complete preemption test. *City of Oakland, 969 F.3d at 905*. The doctrine of complete preemption applies in very limited circumstances; this is not the "rare" statute where complete preemption applies. *Hansen, 902 F.3d at 1057*. First, the PREP Act does not completely replace state law claims related to COVID-19. As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures. *See, e.g., Estate of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 2020 WL 4671091, at *1, *9 (D.N.J. 2020)* (holding that the failure to "observe a wide range of appropriate safety precautions" "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them"); *Jackson, 2020 U.S. Dist. LEXIS 150018, 2020 WL 4815099, at *8* (holding the PREP Act does not apply to "the non-administration or non-use of covered countermeasures" and concluding that the PREP Act did not apply to plaintiff's claims because "[d]efendants fail[ed] to point to any claim in the complaint [*15] where Plaintiff alleges that the administration or use of any of these things [covered countermeasures] caused the decedent's death"); *Estate of Jones v. St. Jude Operating Co., LLC, 524 F. Supp. 3d 1101, 2021 U.S. Dist. LEXIS 43876, 2021 WL 900672, at *4-6 (D. Or. Feb. 16, 2021)*, report and recommendation adopted by 524 F. Supp. 3d 1101, 2021 U.S. Dist. LEXIS 43222, 2021 WL 886217 (D. Or. Mar. 8, 2021) (concluding that the doctrine of complete preemption does not apply, and citing numerous cases

---

[3] The Court does not conclude that Defendant is entitled to PREP Act immunity on any of Plaintiffs' claims. The Los Angeles County Superior Court will make that determination on remand.

in support thereof). These cases plainly hold that the PREP Act does not "wholly displace" state law claims that implicate healthcare entities and COVID-19. *Parker v. St. Jude Operating Co., LLC, 2020 U.S. Dist. LEXIS 249253, 2020 WL 8362407, at *5 (D. Or. Dec. 28, 2020); Beneficial Nat'l Bank, 539 U.S. at 8*.

Second, the PREP Act does not provide a substitute cause of action for Plaintiff's claims based on Defendant's alleged negligence. "Instead, when applicable, the PREP Act provides immunity to defendants on state law negligence claims." *Parker, 2020 U.S. Dist. LEXIS 249253, 2020 WL 8362407, at *5*. *See also Dupervil v. Alliance Health Operations, LLC, ___ F. Supp. 3d ___, 516 F. Supp. 3d 238, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *9 (E.D.N.Y. Feb. 2, 2021)* ("[I]t is important to note that the PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations."). As the district court in *Estate of McCalebb v. AG Lynwood, LLC, 2021 U.S. Dist. LEXIS 47239, 2021 WL 911951 (C.D. Cal. Mar. 1, 2021)* recently stated:

> Other than for willful misconduct, Congress provided no federal remedy that could be pursued through a federal cause of action. Instead, Congress established an emergency fund to provide adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure. The HHS Secretary [*16] is responsible for establishing procedures to administer this compensation program. The Secretary's determination of eligibility and compensation under the program is final and not subject to judicial review.

In this case, Plaintiffs have brought negligence claims. If their negligence claims were preempted, then Plaintiffs would have to look to the Secretary's

compensation program for relief. Under Ninth Circuit law, such administrative relief is not the type of displacement remedy that triggers complete preemption. For purposes of complete preemption, the displacement remedy must supply a federal cause of action. An administrative remedy will not suffice because the complete-preemption doctrine rests on the theory that any state claim within its reach is transformed into federal claims. This transformation is the source of original federal jurisdiction by supplying a federal cause of action.

The PREP Act does not create original federal jurisdiction over a covered claim for negligence or recklessness. On the contrary, Congress precluded it by vesting exclusive jurisdiction in the HHS Secretary. In this circumstance, allowing removal to federal court on complete-preemption grounds is [*17] internally inconsistent: the district court must have jurisdiction for removal to be proper, but the court must then dismiss the removed case because only the administrative agency, not federal courts, have primary jurisdiction. Thus, the PREP Act does not completely preempt such covered claims.

*2021 U.S. Dist. LEXIS 47239, 2021 WL 911951, at * 4* (internal quotations, citations, footnotes, and alterations omitted).[4]

Finally, to the extent that Defendant relies on the Office

of General Counsel's January 8, 2021 Advisory Opinion and the HHS Secretary's *Fourth Amendment* to the March 10, 2020 Declaration in support of its complete preemption argument,[5] the Court agrees with and adopts the analysis of *Dupervil v. Alliance Health*

---

[4] Moreover, to the extent Plaintiffs' claims are based on willful misconduct (and assuming any of those claims actually fall within the scope of the PREP Act), the Court would, in any event, be barred from exercising jurisdiction over those claims because such an action shall be filed and maintained only in the United States District Court for the District of Columbia. *See 42 U.S.C. § 247d-6d(e)(1)*.

---

[5] To the extent that Defendant relies on the Acting Secretary's Fifth Amendment to the March 10, 2020 Declaration, the Court concludes that the Fifth Amendment does not support Defendant's complete preemption argument. On January 28, 2021, the Acting HHS Secretary issued the Fifth Amendment to the March 10, 2020 Declaration to "add additional categories of Qualified Persons authorized to prescribe, dispense, and administer COVID-19 vaccines that are covered countermeasures." *86 Fed. Reg. 7872 (Feb. 2, 2021)*. The Fifth Amendment stated that including additional healthcare professionals as Qualified Persons would achieve the following two purposes: (1) these healthcare professionals would be afforded liability protections in accordance with the PREP Act; and (2) any State law that would otherwise prohibit these health care professionals from prescribing, dispensing, or administering COVID-19 vaccines was preempted. The Fifth Amendment then conducted a narrow preemption analysis with respect to state laws that would otherwise prohibit the additional health care professionals covered by the Fifth Amendment from prescribing, dispensing, or administering COVID-19 vaccines, and concluded that "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law *as described above*" and that preemption of state law is "justified to respond to the nation-wide public health emergency caused by COVID-19." *86 Fed. Reg. at 7874* (emphasis added). Based on the apparent narrow scope of the Fifth Amendment and the limited focus of its preemption analysis, the Court concludes that the Fifth Amendment was not intended to and did not address the complete preemption analysis at issue in this Order. Instead, the Fifth Amendment uses the term "complete preemption" to refer "not to the doctrine of complete preemption for purposes of federal-question jurisdiction, but rather to ordinary, defensive preemption." *Dupervil, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *11 n.3*.

*Operations, LCC,* F. Supp. 3d , 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *10 (E.D.N.Y. Feb. 2, 2021), *Estate of Jones v. St. Jude Operating Company, LLC, 2021 U.S. Dist. LEXIS 43876, 2021 WL 900672, at *6-7 (D. Or. Feb. 16, 2021),* report and recommendation adopted by *2021 U.S. Dist. LEXIS 43222, 2021 WL 886217 (D. Or. Mar. 8, 2021),* and *Evon Smith v. Colonial Care Center, Inc., 2021 U.S. Dist. LEXIS 53554, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021).* Accordingly, the Court concludes that HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the "power to persuade."

Accordingly, the Court concludes that Plaintiffs' claims are not completely preempted by the PREP Act.

## B. Embedded Question of Federal Law

In its second theory of subject matter jurisdiction, Defendant argues that there is embedded federal question jurisdiction over Plaintiffs' claims, citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).* In order [*18] to establish federal jurisdiction due to a "substantial, embedded question of federal law," a "state law claim [must] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).* In other words, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013).* In

addition, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn, 568 U.S. at 260.* "[T]he mere use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim." *Nevada v. Bank of America Corp., 672 F.3d 661, 675 (9th Cir. 2012).* Nor does "the question whether a particular claim arises under [*19] federal law depend . . . on the novelty of the federal issue." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 817, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986)*).

The Court concludes that Plaintiffs' claims do not present an embedded question under *Grable.* The federal issue raised relates to Defendant's *defense,* not the claims alleged by Plaintiffs. As such, the federal issue is not necessarily raised. *See, e.g., Robertson v. Big Blue Healthcare, Inc., 2021 U.S. Dist. LEXIS 36151, 2021 WL 764566, at * (D. Kan. Feb. 26, 2020)* ("To be certain, Defendants intend to assert the PREP Act as a defense to Plaintiff's claim. But that is not enough."); *Dupervil, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *14* ("But this only shows that Defendants may have an affirmative defense to Plaintiff's claims, not that Plaintiff's claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act.").

To the extent Defendant relies on the Office of General Counsel's January 8, 2021 Advisory Opinion and the HHS Secretary's *Fourth Amendment* to the March 10, 2020 Declaration in support of its *Grable* doctrine argument, the Court agrees with and adopts the analysis of *Dupervil, 2021 U.S. Dist. LEXIS 20257, 2021*

WL 355137, at *14 and *Estate of Jones, 2021 U.S. Dist. LEXIS 43876, 2021 WL 900672, at \*6-7*, and concludes that the HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the "power to persuade."

Accordingly, the Court concludes that it does not have subject matter jurisdiction based [\*20] on embedded federal question grounds.

## C. Federal Officer Removal

Finally, in its third theory, Defendant argues that federal officer removal is available because it was "acting under" the direction of a federal officer. Specifically, Defendant argues that it was acting pursuant to directives issued by the Centers for Disease Control and the Centers for Medicare and Medicaid Services ("CMS"), and the California Department of Public Health ("CDPH") that were highly detailed and specifically aimed at helping achieve the federal government's efforts to stop or limit the spread of COVID-19.

Federal officer removal is available under *28 U.S.C. § 1442(a)* if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelidad, Inc. v. Insitu, Inc., 904 F.3d 1095, 1099 (9th Cir. 2018)*. In this case, Defendant has failed to establish it acted "pursuant to a federal officer's directions." Specifically, the directives that Defendant relies on are nothing more than "general regulations and public directives regarding the provision of medical services." *Martin v. Serrano Post Acute LLC, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422947 (C.D. Cal. Sept. 10, 2020)* (quoting *Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 153, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007)*); *see also Saldana v.*

*Glenhaven Healthcare LLC, 2020 U.S. Dist. LEXIS 216490, 2020 WL 6713995 (C.D. Cal. Oct. 14, 2020)* (holding that where [\*21] the defendants argued that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19," such general regulations and public directives were "insufficient" to confer jurisdiction under the federal officer removal statute). In addition, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Martin, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949* (quoting *Watson, 551 U.S. 142, 153, 127 S. Ct. 2301, 168 L. Ed. 2d 42*).

Accordingly, the Court concludes that Defendant has failed to demonstrate that removal was proper under the federal officer removal statute.[6] *See 28 U.S.C. § 1442(a)(1)*.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Remand of the Case to State Court is **GRANTED**, and this action is **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See 28 U.S.C. § 1447(c)*. "To be clear, the Court makes no decision as to whether Plaintiff's claims are barred by the PREP [\*22] Act under principles of ordinary

---

[6] Because the Court concludes that Defendant has failed to demonstrate that Defendant acted "pursuant to a federal officer's directions," the Court need not address the remaining requirements for removal under *28 U.S.C. § 1442(a)*.

defensive preemption, or otherwise. That issue is for the state court to decide." *Dupervil, 2021 U.S. Dist. LEXIS 20257, 2021 WL 355137, at *13*.

IT IS SO ORDERED.

---

End of Document

Exhibit 3

## *Reed v. Sunbridge Hallmark Health Servs., LLC*

United States Court of Appeals for the Ninth Circuit

November 19, 2021, Filed

No. 21-55808

**Reporter**

2021 U.S. App. LEXIS 34533 *; 2021 WL 6694095

LAWRENCE REED, by and through his Successor in Interest; OLIVE REED, individually, Plaintiffs-Appellees, v. SUNBRIDGE HALLMARK HEALTH SERVICES, LLC, DBA Playa Del Rey Center, Defendant-Appellant, and NOMINAL DEFENDANT LISA MARIE REED, Individually; Defendant.

**Prior History:** [*1] D.C. No. 2:21-cv-03702-JFW-AGR. Central District of California, Los Angeles.

*Reed v. Sunbridge Hallmark Health Servs., LLC, 2021 U.S. Dist. LEXIS 93543 (C.D. Cal., May 14, 2021)*

**Counsel:** For LAWRENCE REED, by and through his Successor in Interest, OLIVE REED, individually, Plaintiffs - Appellees: Mark D. Potter, Esquire, Potter Handy, LLP, San Diego, CA.

For SUNBRIDGE HALLMARK HEALTH SERVICES, LLC, DBA Playa Del Rey Center, Defendant - Appellant: Ryan Canavan, Attorney, Kim Suzanne Cruz, Attorney, Evan Topol, Wilson Getty LLP, San Diego, CA; Jon R. Williams, Esquire, Williams Iagmin LLP, San Diego, CA.

## Opinion

ORDER

The parties' stipulated motion (Docket Entry No. 13) for voluntary dismissal is granted. This appeal is dismissed. *Fed. R. App. P. 42(b).*

Costs and fees shall be allocated pursuant to the parties' stipulation.

This order served on the district court acts as the mandate of this court.

---

*End of Document*

<u>**CERTIFICATE OF SERVICE**</u>

<u>***AGUILERA-CUBITT, et al v. AG SEAL BEACH, LLC, et al.***</u>
USDC-Central District, Case No.: 8:22-00249

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      At the time of service, I was over 18 years of age and not a party to the action. My business address is 1955 W. Glenoaks Boulevard, Glendale, California 91201. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      On February 15, 2022, I served the following document:

**- REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY WITH AND IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND -**

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

Kathleen Walker, Esq.
LEWIS BRISBOIS
633 West 5th Street, Suite 4000
Los Angeles, California  90071
Tel: 213.250.1800
Fax: 213.250.7900
Kathleen.Walker@lewisbrisbois.com
***Attorney for Defendants***

Lann G. McIntyre, Esq.
LEWIS BRISBOIS
550 West C Street, Suite 1700
San Diego, California  92101
Tel: 619.233.1006
Fax: 619.233.8627
Lann.McIntyre@lewisbrisbois.com
***Attorney for Defendants***

Rita R. Kanno
LEWIS BRISBOIS
550 West C Street, Suite 1700
San Diego, California  92101
Tel: 619.233.1006
Fax: 619.233.8627
Rita.Kanno@lewisbrisbois.com
***Attorney for Defendants***

///

///

///

The document was served by the following means:

**XX   (BY COURT'S CM/ECF SYSTEM)** The document was served by CM/ECF (excluding those not registered for CM/ECF who were served by mail or email, if applicable).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 15, 2022 _____

*Kym Shephard*

Kym Shephard